## VALLEJO vs. ANDERSON

*Third District Court, for Santa Clara Co., October*, 1857.

EJECTMENT—POSSESSION.

Where title to land requires *political* action to perfect it, it is insufficient to sustain ejectment.*

Where the bounds, mentioned in a grant from the Mexican Government, give more land than the grant purports to convey, the giving of judicial possession to the grantee, by metes and bounds, is necessary to enable him to maintain ejectment for a part thereof, of which he had not actual possession.

This suit was instituted for the purpose of recovering a tract of land claimed under a Mexican grant.

The plaintiff introduced, in evidence, a grant made by Governor Alvarado, in 1842, for the " Rancho de la Alameda." This grant describes the land as being bounded towards the south, by the creek "Alameda," towards the north, by the creek "Alto," towards the east, by the crest of the mountains, and towards the west, by the bay, and being for four leagues.

Vallejo was required, by the terms of the grant, to apply to the proper officer and to obtain judicial possession by metes and bounds; the grant further provides, that the overplus should remain public domain, and also, that it should be approved by the departmental assembly.

The plaintiff failed to obtain judicial possession—was occupying a part of the tract (but not the part in controversy) when granted, and still continues his occupancy thereof. He also introduced proof of an

---

* See *supra* Hensley vs. Tarpey, 211.

enclosure and cultivation; also the proof of "rodeos," and of his "rodeos" on the land, prior to the acquisition of the land by the United States. There was no proof of approval by the departmental assembly. He also introduced the records of the district court of the United States, of the decree of confirmation of the grant—of an appeal therefrom, and its dismissal. He also introduced the *diseño*, or map, and the petition on which the grant was made. This map sketched the land as above described, except the creek "Alto," which by the map, issued from the mountain and ran in a westerly direction towards the bay, terminating in the valley, in front of the bay, from three to five miles therefrom.

About a mile from its termination, or sink, towards its source, a diverging line from the creek, is projected to the bay, north-westerly of the creek, and is marked upon the map, embracing a larger area of land than would be embraced by the creek line.

The defendant introduced proof that the land in dispute is excluded by the creek line, but included by the diverging line; and also, that within the creek line, there are within the described boundary, between six and seven leagues of land.

The counsel for the plaintiff assumed the following positions:

1st. That the decree of confirmation vested the legal title in the plaintiff, so as to enable him to maintain this action.

2d. That he, having had possession of a part of the land under the grant, was constructively in possession of all the land described therein.

3d. That the plaintiff had actual possession of the whole tract, including the land in dispute, prior to the possession of defendant.

*Hamilton, Patterson* and *Williams,* for plaintiffs.

*Clark, Archer,* and *McKee,* for defendant.

HESTER, J., held, in his instructions to the jury:

1st. That as to the first point assumed by the plaintiff: the grant not having had the approval of the departmental assembly, created only an inchoate or equitable title in the claimant, requiring political action to perfect it; that the legal title to the land, in virtue of the treaty with Mexico, passed to the United States; that the 8th and

9th articles of the treaty imposed a political obligation upon the United States, to protect the Mexicans included in the acquired territory, in their property, but without restriction as to the mode—in regard to which Congress had a discretionary power, and in the exercise thereof might have given to the decree of confirmation of the Land Commission, or the courts, the effect of passing the title from the United States to the claimant,—such, however, is not the act of Congress, passed in 1851, to ascertain and settle private land claims in the state of California; its language is, in conferring power upon the land commission and courts, "to decide upon the *validity* of the claim;" (See § 8,) leaving the character of the title as it was before; this character it retained, whether it was an inchoate or equitable title, or a perfect legal title, under the grant; that it can derive no aid from a decree of confirmation, either by the land commission or the court, to entitle it to judicial notice in this form of action; that the decree of confirmation did not divest the United States of the legal title, but she yet holds it as trustee for the claimant, and would so hold it under the existing law, until the emanation of the patent, although the issuing thereof is a ministerial act; that a perfect Mexican grant, vesting in the grantee the legal title, is sufficient, with or without confirmation, to sustain an action of ejectment; that the grant, in this case, creating only an equitable title, is insufficient to enable the plaintiff to recover.

It was also held, that the only notice which a jury had a right to take of the record evidence of the decree, was to enable them to determine whether the claim was presented to the proper forum, within the time limited by the act of Congress.

2d. It was also held, as to the second position, that the grant conferred a right to only four leagues, provided that quantity is within the boundary of the grant; that if there is an excess, the same remains part of the public domain; that if there is no excess, the grant of the Governor, describing the tract by metes and bounds, was a segregation thereof from the public domain; that the creek "Alto," and a straight line from its termination to the bay, projected according to the general course of the creek, is the line described in the grant, towards the north; that the line towards the bay, is the line of ordinary high tide; that if there are more than four leagues within the described boundary, judicial possession, by metes and bounds, was necessary under the

Mexican government, to segregate the land granted from the public domain, and was also necessary, to confer upon the plaintiff the right of constructive possession of the land in connection with his actual possession of a part thereof; that this right of constructive possession did not attach without a certain and definite boundary; that the quantity of land within the described boundary, is a question of fact for the jury to determine; that if there are not exceeding four leagues, the description in the grant is a sufficient indication of the boundary to enable the plaintiff to avail himself of the constructive possession, but if there is an excess, the plaintiff's right being limited to four leagues, the same should have been set off to him by metes and bounds, without which the plaintiff cannot avail himself of the constructive possession.

3d. It was also held as to the third position, that if the plaintiff was in the possession of the land in dispute, previously to the defendant, his prior possession was evidence of an older and better right; that possession of land is the power of controlling it, and subjecting it to one's own use; that it is not necessary, for this purpose, that it should have been enclosed with a fence, provided the use was secured; that "rodeoing" was an act of ownership over, and is a circumstance for the jury to consider as to the boundary of the rancho, but unless the owner had control of the land as above mentioned, "rodeos" do not constitute possession; they are circumstances, however for the consideration of the jury, in determining the fact of the owner's control of the land.

The jury found for defendant.